### JOHN ANGEL v. THE STATE.

No. 2511.   Decided May 13, 1903.

**1.—Assault to Murder Wife—Aggravated Assault—Charge.**

Defendant being on trial for assault to murder his wife, when it appeared that he was of weak mind; that they had separated and he had taken the children; that the wife went with an officer to get them, and was taking them away, whereupon defendant ran between them, and, placing his gun between them, fired it; Held, this suggested that the shot was fired to frighten and not with specific intent to kill her; and the court should have charged the law of aggravated assault with reference to this state of facts.

**2.—Same—Deadly Weapon.**

If a gun is fired for the purpose of frightening another, it is not necessarily a deadly weapon, and the court should not assume, as a matter of law, that it was a deadly weapon.

**3.—Insanity—Charge.**

On an issue of insanity, where the evidence, and one of the strongest unquestioned fact relied on, was that defendant was a man of very weak mind, a charge of court which told the jury, that, "the question for your

determination is not whether defendant is a man of weak or strong mind," etc., was upon the weight of evidence. and withdrew from the jury the consideration of the important fact upon which the defense of insanity rested, and, moreover, a question which was to be decided alone by the jury.

Appeal from the District Court of Johnson. Tried below before Hon. Wm. Poindexter.

Appeal from a conviction of assault with intent to murder his wife; penalty, four years imprisonment in the penitentiary.

The important facts are stated in the opinion.

*D. W. Odell,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of an assault with intent to murder his wife, and his punishment assessed at confinement in the penitentiary for a term of four years.

Constable Groom, for the State, testified, in effect: That he was at the residence of E. W. Angel, father of appellant, searching for appellant on account of some previous trouble appellant had had with his wife. When he arrived at the residence of Angel, he found E. W. Angel, his wife and appellant's children. It seems appellant had taken the children from his wife that morning and carried them to the residence of his father; and that Groom and defendant's wife had gone there in part to secure and take away the children.

She was just leaving the place with the children, and Groom was standing at the house talking with the father and mother of defendant, when he looked out west of the house and saw defendant coming through the bushes in the direction of his wife in a rather stooped or bent position, with a gun in his hand. He was then about thirty steps from his wife. Witness "broke and run and hallooed to him to hold on. After passing out at the yard gate, I hallooed to Hanna to run there. Hanna was north of the house at the public road." Defendant paid no attention to witness, and when he (appellant) reached a point within about ten feet of his wife, witness hallooed to the wife to look out. As appellant approached her, she turned, and appellant "struck down sorter between her and her children with his gun like he was trying to separate her from her children. He divided the children on the right and she to the left. She broke to run and he shot at her with a double-barreled shotgun. She threw her hands up and screamed and fell face foremost. She scuffled around and got up, and he advanced, and as he started he had his gun leveled down on her the second time. I then fired at him and he took the gun from his shoulder and changed ends with it and struck at her. As he struck she reached up and caught the gun, and then he struck at her the second time, and she caught it, and he struck at her the third time." Witness made appellant desist and took his gun from him. When witness fired at appellant he shot him

in the fleshy part of the left arm above the elbow. There had been some trouble between appellant and his wife, but not of any serious character. It had been a war of words, except the previous difficulty on the morning preceding the difficulty under discussion, in which he had made an assault on his wife. The evidence is uncontradicted that appellant was a young man of very weak mind, and was of sufficient cogency to induce the trial judge to charge the issue of insanity. Perhaps this is a sufficient statement of the case for the purpose of reviewing the questions raised.

The court charged the jury in reference to assault to murder, and aggravated assault, predicated upon the idea that had a killing occurred, the homicide would have been manslaughter. Exception was reserved to the charge on the question of aggravated assault, because the issue was suggested and raised by the evidence that defendant shot, not to kill, but to frighten his wife, as to whether defendant entertained a specific intent to kill; and if not, the court should have charged the jury to consider his acts from that standpoint with reference to the law of aggravated assault. We are of opinion that, under the State's case, as made by the witness Groom, the issue is fairly and squarely suggested that appellant may not have shot with the intent to kill his wife, but only to frighten; and this is made evident from the statement of the witness' testimony above. Appellant had taken the children home; the wife had gone there with the officer and was taking the children away; they had separated, and when he approached his wife and the children, he ran between them, placed the gun between his wife on one side and the children on the other. He was at close rang, and his wife was within a few feet of him. The shot was fired, and he could have killed his wife, as there was nothing to intervene and no power interfering. It is strongly suggested, under the circumstances, that the shot was fired to frighten and not to kill; at least it was a question to be deduced from the testimony, and that matter is relegated to the jury and not the court for decision.

The court charged the jury that "a loaded shotgun used as a firearm within gunshot distance is a deadly weapon. The question as to whether a shotgun used as a bludgeon is a deadly weapon is one of fact for your determination under the evidence." Exception was reserved to that portion of this excerpt of the charge in which the court stated that "a shotgun used as a firearm within gunshot distance is a deadly weapon," because it is a charge on the weight of the testimony and an assumption of the fact that the shotgun in question was loaded and used as a firearm for the purpose of killing. This charge should not have been given in this form. As to how the gun was loaded, the record is silent. If the gun was fired for the purpose of frightening, then it was not necessarily a deadly weapon; and it was not a matter of law that it was a deadly weapon.

Exception was reserved to another portion of the court's charge wherein it is stated "that the question for your determination is not

whether defendant is a man of weak or strong mind," etc. There was evidence introduced before the jury bearing on the question of insanity, and one of the strongest facts relied on, and it was unquestioned, was that appellant was a man of very weak mind. This was one of the strongest facts introduced on the question of insanity. Insanity was one of the questions in the case for the jury to decide; it is a question of fact, and the inherent weakness of defendant's mind was one of the salient features of this issue. To instruct the jury, as the court did, may have, and doubtless did have, the effect of withdrawing from their consideration this important fact. This was a charge on the weight of the evidence. It was a question to be decided by the jury as to the effect of his weakness of intellect on this particular issue. Here we have him charged with assault to murder his wife. The wife, for fancied or real injuries, had outraged appellant; at least, such were his feelings about the matter; they had separated, and he had taken the children to his father's house. The wife, accompanied by Groom, had secured the children and was taking them away. Appellant came upon the scene, armed with a shotgun. Under these circumstances his mind was inflamed and excited; and to withdraw this phase of the testimony from the jury was hurtful, especially so with reference to this pretended issue. And it is not at all clear but that its withdrawal may also have had a serious effect upon the minds of the jury in weighing the testimony in regard to whether the case was one of aggravated assault and battery or assault with intent to murder. In passing upon questions of this character and judging of our fellow man in criminal prosecutions, it is a fundamental proposition of law in this State that we view it entirely from the standpoint of the accused. The nearer we can approach and uncover the real purposes and intent of his mind or the motives that actuate him, the closer we attain a perfect administration of the law. Anything that brings out before the court and jury the real purpose, motive and intent of an accused, tends to exemplify and explain his acts and conduct or to show his criminality or want of criminality. And in viewing this matter, trial courts should do so from the standpoint of the presumption of innocence and reasonable doubt. These two latter propositions are the basic principles of criminal law in this State in the trial of an accused. If there is a reasonable doubt upon the question of criminality or the intent or motive of an accused, he is entitled to the benefit of that doubt, whether viewed from the standpoint of the evidence or the charge of the court.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*